is not receiving 15 minutes per side. Mr. Morgan, the floor is yours. Your Honors, I would respectfully request three minutes of rebuttal time. May it please the Court, I am Colby Morgan. At the outset, I apologize that I have the Tennessee allergy miasma and have lost part of my voice, but I'll do the best I can. I speak today for the Defendant's Federal Express Corporation Long-Term Disability Plan, the Federal Express Corporation, which is the plan administrator, Aetna Life Insurance Company, which is the entry of judgment in favor of Mr. Fura granting his claim for long-term disability benefits for a total disability and overturning Aetna's denial of those benefits. We contend that the lower court erred by not properly applying the highly deferential, arbitrary, and capricious standard of review and that Aetna did not act arbitrarily and capriciously in denying total disability benefits. The lower court did not give any deference at all to Aetna's decision to deny benefits, as it was required to do, despite the substantial evidence and the significant objective findings in the administrative record supporting the denial of benefits. Now FedEx through Aetna did only a file review here, correct? That's correct, Your Honor. Didn't do any examination itself. That is correct, and that's perfectly acceptable under federal practice. It's not exactly favored, but it's permissible. Well, it was pronounced that the law of the land in the Knorr decision, as the court knows, and the peer review physicians in this case were highly qualified. There's no evidence whatsoever of any bias on their part. They did review the entire record. They commented on the entire record. They reviewed the entire record. I mean, again, this is probably a problem for the appellee, but it is very strange to have a Social Security ruling, which is, you know, also about total disability, and I don't know if this is FedEx's issue, Aetna's issue, but I realize you can just say, hey, it's your burden. If we don't think you've met your burden, we're just going to let it go, but it does seem funny when it's really inefficient. I mean, you know, it's possible it could now have to happen here. We now could send it back, and in fact, if you, quote, win, that's one possibility. It goes back, and I can't imagine doing this again without looking at the Social Security record, getting all that evidence. I realize they're not the same standards. I realize one doesn't control the other, but intuitively there's something that seems funny about that. So why don't they just pull that record in whenever there's already been a Social Security grant? Well, it's not that easy to get the record, Your Honors. Of course, it's not our burden initially. It's not the burden of the plan administrator or the claims planning administrator to order the record. To get that record, we'd have to get the permission of Mr. Fora. He would have to sign a lease. It wouldn't be very hard to say if you want to rely at any point on what's happened in the Social Security process, if you want to invoke that at any stage, whether with us or in the courts, we want to hear about it now and put them to the choice. If they don't want to do anything, then it seems they've got a problem when they want to tell the Court of Appeals that it's relevant to the application, and if they, as I suspect happens, decide, well, I probably ought to put this all in. It's actually a favorable ruling. Then we have the record complete, or at least that part of it complete. I think this is more of a problem for Mr. Fora than it is for Federal Express. Well, the timing of the decision was such that he could have or someone could have, whoever's responsibility it is. I mean, the entire record could have been submitted because the decision was made prior to Aetna's ultimate determination, and what was submitted was just the Social Security result, not even the underlying opinion or the underlying record. Is that right? That's right. As a matter of fact, I'll go one step further, Your Honor. There is nothing in the record from the Social Security Administration. It's the representative of Mr. It's a representation of Mr. Furrow. It's a representation of Mr. Furrow's counsel. It's just argument of counsel, and I believe this Court has held that in the absence of anything from the Social Security Administration, that shouldn't even be considered at all. It's non-evidence. I totally get that. I'm just struggling a little bit with why. Is this a question for Aetna or for FedEx? I can't tell who it's for, but I can't understand why that's just not a question. Have you applied? You say the standard here is total disability. I can't imagine why you wouldn't ask what's going on for Social Security purposes, and if you get a yes, why you wouldn't just say, okay, give us what you have, and if you don't, you can't rely on whatever happened there in this proceeding. We asked Mr. Furrow, or when I say we, I'm speaking in terms of Aetna now, in the first instance. Aetna's claims paying administrator basically decides the cases and gathers the information he wanted to provide. He has the burden, and there's nothing in the plan that requires Federal Express Corporation. I get it. I'm really suggesting something for future cases. I understand. It would actually be, if you think about, if you carry through what Judge Sutton is asking about, if you think about it, it would be as much in Aetna's interest to have the underlying record, I mean, because then Aetna could try to insulate itself from claims that it had acted arbitrary and capriciously by explaining what it was that made it come to a different result. So ultimately, it would be presumably probably in everyone's interest in a case of this kind. That may be so, but it's our position. It may not be your burden. It's not our burden. It probably is. And we invited them to submit the Social Security record, which they didn't. You wonder why they didn't. Is there something there that hurts them? To confirm Judge Gibbons' point, look at page 12 of the District Court Opinion. You know, he just acted on this intuition. I'm not saying that's exclusively what he acted upon, but there is an intuition that if you're totally disabled under one thing, you're totally disabled under another, even though there are different standards. You don't have to respond to this anymore. My point is Judge Gibbons' point. They are very different standards. As a matter of fact, the fact is that Mr. Fura had great upper body strength. He had cognitive ability. He had mobility. He could have worked as a Costco or a Walmart greeter or even a call center operator. Well, let's talk about that, kind of get into the details, I suppose. You're reviewers who, again, it's really hard to keep the doctor's name straight throughout this. But you have the two reviewers who say, whoa, whoa, whoa, he can move his arms and he has upper body mobility. But I want to give you a chance to respond to what seems to be at least my impression as I sit here that those reviewers did not address evidence from Drs. Ganley and Easton that recorded conditions that would restrict his mobility. For example, Ganley and Easton both record numbness in his legs, difficulties with balance and stability. I'll just rifle through it and then you can answer. They each recorded restrictions on his ability to sit, stand, and drive. And another doctor, Kalkanis, said he only had full strength in his legs when not bearing weight. And so there seems to be evidence that he has difficulty sitting, standing, driving, reaching. And it doesn't seem that the file reviewers speak to that. And so, I mean, you could move your arms but then have a difficulty, you know, sitting in a sedentary position for a long time or reaching, you know, in a particular way. How would you respond to the argument that the reviewers didn't deal with that evidence? Well, the reviewers were looking at the question of whether Mr. Fora was totally disabled from any occupation. Meaning he couldn't work 25 hours a week in any occupation, right? Right. Well, that's what they were addressing. They were not concerned with whether he could perform his job at federal expense. I'm with you on that. But if sort of the Alamo of your position here is he can move his arms, and you have evidence saying, well, yeah, he can move his arms, but he can't reach certain ways, he might start to exclude occupations to the point where he is totally disabled. Well, it certainly would exclude some occupations. There's no question about that. Did your people deal with this evidence, I guess, is my initial question. Well, I think they did deal with it, Your Honor. They dealt with it in a number of ways. One of which was to look at the entire body to determine whether Mr. Fora, whether his upper extremities were tested. And they noticed very saliently that none of the treating physicians looked at that at all. Nor did the district judge. What do you mean by that last point? They didn't test his upper body strength? There was only one minor test of the mid-palm, I think, of the right hand, which showed that at one point in time he had some sensory deficiency there. But that was the only test that was ever done on his upper extremities. Even the treating physicians agree that Mr. Fora, even the doctor who did, I think Dr. Ganley, who did the mid-palmer test, even he agrees that Mr. Fora had great upper body strength. It was 5 over 5, which is normal. And there were no other tests. But he could have great upper body strength but not be able to sit for more than, say, an hour at a time. Well, sure. And I think they said that he couldn't sit for more than three hours. Now, don't hold me to this. I'm going from memory. And maybe an hour of standing and then maybe 40 minutes of walking. Well, you start looking at that over the period of a day and that begins to add up to the For periods of time during the day, that adds up to well over 25 hours in a seven-day week. Did the file reviewers actually specifically address this mobility evidence in those terms? Or is that just your own theory? Well, they did address the mobility and the cognitive ability, yes. I'm not talking about cognitive. I'm just saying about mobility. I'm getting the doctors confused. Dr. Cohen, I believe it was, said that Mr. Fora could ambulate and he could move without assistance. Now, he even did a second report explaining that, saying that without assistance, it didn't refer to assistance from other people, that he could move by himself with a walker, for Now, granted, maybe he can't drive, but he can find other transportation to get to work. But, yes, that was discussed fairly thoroughly. And the, I think my initial time is up. Mr. Young. May it please the court, my name is Jesse Young on behalf of Edward Fura. I'd like to start just by addressing the upper extremities issue. I heard the defendants say once again, they've carefully reviewed the entire record. There's no evidence in the record of upper extremity functionality impairment in the record. In the brief, we've cited at least three examples, well, two, maybe a third. The third one's a little bit ambiguous. But at least two tests where he had his upper extremities tested. And they found no sensory feeling in his arms. Hands, arms, what do you mean by that? Hands? Well, it says upper extremities, so I'm assuming... At what point in time? Well, the first test was July 23, 2007, which is after his second surgery, which he became disabled after his second surgery. The second test was February 8, 2008, upper extremities, same result. No function, no sensation in his upper extremities. What about this issue, I don't mean to kind of derail where you're going in your argument. But what about this issue about it being your burden to submit the social security record and why would... I don't know that you're required to explain yourself, but I think we're sort of interested in how this case ended up where it did. And what I was thinking when Mr. Morgan was talking about the Walmart greeter, you know, you go through that process in the social security analysis where you're considering other jobs in the national economy, and it's pretty hard to find somebody to say that somebody can't... I mean, if you successfully gotten through that part of the process with some of the experts who refer to jobs that, while they might be available in the economy, common sense would tell you the particular individual whose case is under consideration is not going to be hired for them. And if you've gotten over that hurdle, why wouldn't you want the administrator to know about it? Well, I agree with you. And unfortunately, I wasn't part of the appeal process for Mr. Fura, so I can't speak to why the records from... You didn't get involved at the administrative... Not until the actual lawsuit was filed. So I can't speak to why that's not in the record. I wish it was. Well, it's probably not a fair question anyway. Is it simple? I mean, so just who cares who's to blame, but is it simple to just... Is it simply a function of getting the record and then submitting, and then you save all this money? If you're the plaintiff, and Mr. Morgan might be right, he can't just ask for the medical records, but you could. I mean, not you personally, but your client could. I think it's important to remember this is just one factor in the analysis, the SSA determination. The standard under the SSA is complete and total disability. You can't work in any job whatsoever, which is more narrow and harder to meet than the long-term disability one. I mean, it seems to help you, which is why we're puzzled that it didn't... Exactly. Which, you know, I wish it was in the record, and I think... Well, there may still be time. So one thing that I found very... Just very hard to justify, because I consider this a pretty close case. It seems to me your client's doctors could have said a little more. There seems to be a little conclusory, and I'm not sure it follows the FedEx plan. But what I really find hard to justify by the district court's decision is to say, okay, I'm not even going to give you a second chance. In other words, it would... On this record, the only thing that's not arbitrary and capricious is to grant benefits. And I know that has happened before, so I'm not saying that's beyond his authority. But I think you and I would agree that's the rare case. And so why isn't FedEx at least right about that? And vice versa, they don't get judgment as a matter of law. We send it back. You supplement with your Social Security. Maybe in light of the Social Security, they get a vocational expert, and we find the truth. My answer to that would be the Social Security administration decision is just one factor. As the court knows, the Sixth Circuit has... Okay, well, then justify his decision, because it's pretty rare to say the only non-arbitrary, capricious thing to do here is to grant benefits in a case where I do think the treating physicians were conclusory in places. Well, I... You know, I think what the district court judge was looking at was why send it back down to the administrator when it's going to waste everybody's time? We're going to be back up here in three years. Mr. Feer is still wallowing with no disability benefits. Clearly, Judge O'Meara made one mistake. I mean, he can't rely on the Social Security determination without putting the evidence in the record. I mean, that can't be right, right? I mean, just the lawyer's representation that he's collecting benefits is enough to be part of the reason for it being arbitrary, capricious when the administrators didn't have that record? I think it's just one factor. If you look at the totality of the record... But Mr. Morgan makes an important point, which it has no evidentiary status. I mean, as far as the record's concerned, here we are all showing that it's bothering us that the representation is that he got Social Security benefits, and yet we don't really have any evidence in the record that tells us that that's the case. I will tell you this in response to that. The FedEx plan requires claimants to apply through the SSA for benefits. It requires it. They benefit from a favorable decision for the claimant. Mr. Fiera received benefits. He gets $2,000 a month, I think, for the SSA benefits, which offsets whatever FedEx owes him on the benefits. So there's no question they know that he's receiving the benefits. That shouldn't be a question in this case. I understand your point, but that's the reality of it. Would we like to keep discussing the SSA? That's all right. I think we've worn it out. My point is, the totality of this case... Mr. Fiera is completely disabled, and I wish I could have brought him here with me to show you how disabled he really is. He cannot function. He can't work more than 25 hours a week. Three doctors have studied him for four years. They all certify that he can't work 25 hours a week. But the plan requires matching up those conclusions with diagnoses. I think the record does that. There are scores of tests and results that show he can't use his legs. His condition is degenerative. He doesn't have sensory function in his legs or his arms. If he stands up straight without a walker, he just falls over. He doesn't have balance. He's completely disabled. There's no job that he can work for 25 hours a week. First of all, I thought the record didn't say what you said. I thought the record showed that with assistance he could stand some each day. He could ambulate some each day. I thought in terms of arbitrary capricious review, there were no restrictions on his mind or his upper extremities. I thought that was under arbitrary capricious review the way we look at it. It's just not obvious to me. You may be right, but it's arbitrary capricious review which suggests it should be obvious to me. It just doesn't seem that obvious that that means there are no jobs for 25 hours a week, not within FedEx, but anywhere. There are no jobs that he can do. His doctors have certified that he cannot work the jobs. They're the only ones that have studied him. If FedEx was so sure he couldn't work, why didn't they order the independent medical evaluation? They could have done it. They had the right to do it. They chose not to because they might have known what was going to happen if they did order it. Don't you think that begs the question? They could have also assumed these are just treating physicians making conclusions and they're not connecting the dots. I agree with you. It would have been helpful to us. They don't explain why they think that. They're required to under Evans, which is a Sixth Circuit case. If they're going to discount or ignore a treating physician's opinion, they need to explain why they do that. They didn't do that. Is that a Social Security case or is that a plan case? That is an ERISA case, just like this one. Further, with respect to the reviewing physicians, they claim that they reviewed the whole record, but they state there's absolutely no evidence of any upper extremity impairment. That's totally contrary to what's actually in the record from Dr. Gantley. I just cited the two or three instances where she actually found upper extremity impairment. It's clear that they're either ignoring what she's saying or they're just not being honest about what's in the record. I think that's an important factor in this case. Also important, his condition is degenerative. It's going to get worse as time goes on. I think that's an important factor for this court to consider. Finally, with respect to credibility determinations, the doctors or defendants make credibility determinations with respect to his pain, his pain level. They've never examined him. They go on to say, and I quote, the most significant evidence of fear is disability is his pain. Aren't you kind of stuck with the terms of the plan there, though? I'm trying to find the exact language. I know what you're talking about. It says pain alone is not proof of disability. There's more than just pain. He is making complaints about pain. He has severe pain. But he's also got all these other things going on. This isn't pain alone. It's pain coupled with all these other things he's got going on. It says that you have to have significant objective findings. Would you agree that somebody who comes in strictly with complaints of pain is not going to be able to get a disability determination regardless of how much pain they say they have? I agree. Your position is you have these tests that show actual impairments. Did he have stenosis? Is that part of what's going on here? I'm not sure. This isn't a fibromyalgia case. He's not just complaining about pain. He's got pain. He's got loss of sensory function. He's got loss of bladder. That's another thing. There's no bladder dysfunction. I understand your argument on that point. But what's the upshot of the bladder dysfunction? People function with that. It's just one more thing. On top of everything else, there's nothing in the record to say. They've reviewed this entire record carefully, remember. Now they're trying to say there's nothing in there about bladder dysfunction. Yes, there is. I'm just not sure where that goes, though. There are plenty of folks in the workplace with bladder dysfunction. I'm making the point that the review from defendants is not as complete and thorough as they say it is. It's sort of an impeachment point you're making? Yes. There's multiple points just like that. But the main things you've said so far that have gotten my attention where they said they looked at everything and they said there's none of X and there's none of Y would be the point about upper extremities. That seems to be your major point. And then also bladder. Are there other things where in the report they say he has no such problem and then when you look at the record they could not have possibly read that? Are there other things that fit that category? Well, the big ones obviously are the upper extremity functionality because that's the theme of their case, right? And so the argument would go the decision by Aetna was arbitrary and capricious because it relied on a file review that was inconsistent with what the record actually showed? Not only inconsistent, but not complete, not thorough, and not reasonably explained. In other words, the file review was so unreliable that relying on the file reviews as opposed to the opinions of the treating physicians was in fact arbitrary and capricious? Yes, under the circumstances. I think the case law in the Sixth Circuit says when you have this much evidence from treating physicians, especially if three of them certify that he's totally disabled, to not do a file review to me is arbitrary and capricious. Well, you're saying they did an incorrect file review. They not only did an incomplete and not accurate file review, they disregarded the treating physicians' findings. Okay, so if a plan chooses to do a file review rather than an independent examination and the file reviewers fail to consider pieces of evidence X, Y, and Z, isn't it the proper remedy to remand for consideration of that evidence as opposed for us to say that the substantive determination of the file reviewers is actually arbitrary in light of that evidence? Because that makes us have to divine the medical import of the evidence that they didn't consider. I think the answer to that is no, you don't have to remand it. One of the cases that I've cited is because I think the Sixth Circuit said, why should we waste everybody's time by remanding the case? But in that instance, it would have to be obvious to us. Yeah, you can decide as a matter of law from this court is this arbitrary and capricious. You don't have to remand it. You didn't know what stenosis meant. How do you think we feel? I've been with the case for a couple of years now, so I know some of it, but I haven't gotten all of it. No, but that's not my point. My point is, following up on Judge Ketledge's question, it's one thing to say their decision can't be sustained. FedEx's decision can't be sustained. It's another thing to say as a matter of law, you get benefits because, oh, you didn't acknowledge this bladder issue. You didn't acknowledge the upper extremity. To say they didn't acknowledge it doesn't tell you, doesn't tell us exactly how to deal with it. Well, I also think they didn't explain why... It inserts us in the way, in the deliberation, in the determination in a way that may not be desirable given the nature of the evidence that's required in order to determine one of these matters, one of these cases. It's hard for lawyers. Okay. I don't have anything further. No further questions. Thank you. All right, Mr. Morgan. I think you had your three minutes. Your Honors, I'll leave it up to you to look at the record very carefully on the issue of to what extent the treating physicians looked at upper body. It wasn't discussed in their reports. It wasn't even discussed in Dr. Ganley's affidavit. The judge didn't bring it up, nor did they bring it up. But, I mean, there's information about this in the record. Very, very minimal. That's problematic. If they say it doesn't exist and there's information supporting it, we're kind of stuck. But it's not information supporting total disability. Maybe, maybe not. But if the finding of no total disability is based on a file review concluding that the upper body extremities that the upper extremities, that mobility is unimpaired, then that I submit, Your Honor, that it is unimpaired. The last word, the last tests show that Mr. Fora had upper body capability and he had 5 over 5 strength. Well, capability is a general word. Let's just say strength. 5 over 5 strength. We talk about strength, we talk about mobility. Two different things. Talking about capability fuzzes that up. They're talking about mobility. The treating physicians themselves say that he has upper body strength and mobility. Where? Do you have a record site for it? The record, well, not off the top of my head, Your Honor, but I've seen it in the record. That would be something that would zero us right in to what you're saying. His own treating physicians look at the upper body and say that he has upper body strength. Is that in your brief somewhere? Yes, it is. It is in my brief. And we have cited to the record. Can I ask you a question? Hypothetically, let's just say it does go back to the plan administrator. I take it you would agree at that point they are allowed to put in, I mean, first of all, can you supplement at that point? What's your take on that? Supplementing including social security, including you want to put a vocational person in, they want to put a vocational person in. Is that how it works? That can happen then? Well, it can happen. I don't think it's necessary. I know your view. I get that. I'm saying hypothetically it's sent back because the court for whatever reason decides neither party can win as a matter of law, just hypothetically. I'm just trying to get a sense of whether everyone agrees what happens on remand is that if a party wants, they can supplement the record and if administrator wants, it can supplement its explanation. If the matter were remanded, that would happen? That would be the norm. So what would happen if it was remanded, obviously the administrator would have to issue a new decision. So that part would be a given. As optional other things that might happen, the social security record could be submitted. It could be. FedEx could decide not to rely on a file review but rather to have Mr. Fura independently examined. It could happen. There could be some additional vocational consideration of exactly what it is Mr. Fura might do, be able to do. All those things can happen. That's correct, Judge. You prefer they didn't. I think both of you would prefer they didn't. I'm sorry, I've run out of time. I have more to say. Thank you for your attention. Thank you both for your argument. We will consider the case carefully. Perhaps it will come up in your next case.